**Carter STURM**

v.

**Richard J. ROSS, et al.**

**No. CIV.A. G–96–502.**

United States District Court, S.D. Texas, Galveston Division.

Aug. 10, 1998.

Victor A Sturm, Pearland, TX, for Plaintiff.

Richard John Urra, Office of City Attorney, Kyle Lesley Dickson, Maxwell and Walker, Houston, TX, for Defendants.

### *ORDER*

KENT, District Judge.

In this action, Plaintiff Carter Sturm asserts claims of assault and battery, intentional infliction of emotional distress, false imprisonment, malicious prosecution, and civil rights violations under 42 U.S.C. § 1983. Now before the Court is Defendants' 12(b)(6) Motion to Dismiss and Motion for Summary Judgment, filed October 17, 1997. For the reasons set forth below, Defendants' Motion is **DENIED**.

### I. FACTUAL BACKGROUND

On September 22, 1994, Sturm and his friend Anthony Vento went to J. Larkins, a nightclub then located in Clear Lake City. They arrived at the club at around 11:00 p.m. Throughout the evening, Sturm acknowledges that he drank three or four mixed drinks. At approximately 1:45 a.m., the Plaintiff decided he was ready to leave the club. Before he left, he asked the waitress, Emily Harrell, if she had seen Vento because Vento was supposed to take him home. Harrell told Sturm to go wait outside in the parking lot by Vento's truck if he could not find Vento.

Sturm then left the club and went to a convenience store. After he returned, he went to wait by Vento's truck in the parking lot of the club. As he was waiting by the truck, Defendant Ross, an off-duty City of Houston police officer employed by J. Larkins, approached Sturm and asked him why he was not in his car.

From this point on, the material facts of this case are hotly disputed. According to Plaintiff's version of events, Sturm politely informed Ross that it was his friend's truck, that it was locked, and that he was waiting

for his friend to come out of the club and take him home. Defendant Ross then came closer and repeated his question more aggressively. Plaintiff, not understanding why Ross was being aggressive, then repeated his original answer, and, "with youthful ignorance, added, 'Why are you fucking with me?'" Plaintiff claims that Ross became enraged and yelled "I'll show you fucking with you!" and violently threw Sturm to the ground. Ross handcuffed Sturm and violently pressed his knee in the back of Sturm's neck, again yelling to him that he would show Plaintiff "what fucking with you is!" Plaintiff claims that he offered no resistance to Ross at any point during his arrest.

Plaintiff alleges that Ross then shoved him into the back seat of a City of Houston police car, purposefully slamming Plaintiff's head into the roof of the car in the process. The two officers, Ross and Doyle, then allegedly drove Plaintiff across the parking lot to the entrance of the club, consistently repeating his earlier promises. Doyle and Ross then forcefully escorted Plaintiff into the club and took him into the back room, where Ross proceeded to attack the handcuffed Plaintiff, brutally beating him while Doyle and some of the club's bouncers watched. Plaintiff claims that he offered no resistance whatsoever while "Ross repeatedly kicked and beat him in the head and body." Doyle then allegedly called Sturm "disgusting" and "pitiful," and one of the bouncers told Plaintiff "If you don't shut up, I'll kick your ass" after Plaintiff asked for one of the bouncer's names.

Defendants' version of the events that occurred after Ross approached Sturm diverge considerably from Plaintiff's version. Ross states in his affidavit that he approached Sturm to tell him that the parking lot needed to be cleared, and asked him to get in his vehicle and leave. Ross claims that Sturm then belligerently turned to him and yelled "Fuck you! Why are you harassing me?!" According to Defendants, when Ross approached Sturm he smelled of alcohol, was swaying and being belligerent, and using foul language. Ross claims that he determined Sturm "was in no condition to drive," and believed that he had probable cause to arrest Sturm "because he was a danger to himself and other people."

Ross then arrested Plaintiff for public intoxication. Ross claims that when he attempted to handcuff him, Sturm resisted by clinching his hands together and placing them on the hood of the truck. When Ross grabbed his hands, Sturm allegedly pulled away and started kicking. In the struggle, Ross claims that both men fell to the ground and Sturm hit his head on the pavement, allegedly causing the injury that Sturm claims was due to Ross purposefully beating his head against the roof of the police car.

After Doyle and one of the club's bouncers arrived to help Ross, the officers took Sturm to the back room of J. Larkins. Ross alleges that they did so because they had to fill out the paperwork for the arrest and call for a transport vehicle. Ross and Doyle claim that Sturm began kicking furniture inside the office, spitting and kicking at the officers, and threatening that he was going to sue the officers and employees. The officers claim that they had to physically restrain him.

After these events, Sturm was taken out of the office, through the front door, and into another police car where he was taken to jail and charged with public intoxication. He was released from jail the following morning. The criminal action against him was later dismissed when Defendant Ross failed to appear at trial.

## II. LEGAL STANDARDS

When considering a Motion to Dismiss for failure to state a claim, the Court accepts as true all well-pleaded allegations in the complaint, and views them in the light most favorable to the plaintiff. See Malina v. Gonzales, 994 F.2d 1121, 1125 (5th Cir.1993). Such motions should be granted only when it appears without a doubt that the plaintiff can prove no set of facts in support of her claims that would entitle her to relief. Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); Tuchman v. DSC Communications Corp., 14 F.3d 1061, 1067 (5th Cir.1994).

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The Court must accept the evidence of the

nonmoving party and draw all justifiable inferences in favor of that party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The movant may meet this burden by pointing out to the Court that there is an absence of proof on any essential element of the nonmovant's case. *Id.,* 477 U.S. at 325, 106 S.Ct. at 2554. Once this burden is met, the burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita,* 475 U.S. at 585–87, 106 S.Ct. at 1355–56; *Wise v. E.I. DuPont De Nemours & Co.,* 58 F.3d 193, 195 (5th Cir.1995). The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts," but instead must come forward with specific facts to show that there is a genuine issue for trial. *Matsushita,* 475 U.S. at 586–87, 106 S.Ct. at 1355–56 (citing FED. R. CIV. P. 56(e)).

The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *Anderson,* 477 U.S. at 247–48, 106 S.Ct. at 2510. If the evidence is such that a reasonable fact-finder could find in favor of the nonmoving party, summary judgment should not be granted. *Id.; see also Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356.

## III. QUALIFIED IMMUNITY

■ The Court first addresses the individual Defendants' qualified immunity defenses. Qualified immunity protects government officials from liability for conduct in the course of their official duties unless the alleged conduct violated clearly established law of which a reasonable public official would have been aware. *Gunaca v. State of Texas,* 65 F.3d 467, 473 (5th Cir.1995); *Gibson v. Rich,* 44 F.3d 274, 277 (5th Cir.1995). The Court must determine whether "the contours of the right [were] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

■ Whether a defendant is entitled to qualified immunity is an issue of law to be decided by the Court. *See Hunter v. Bryant,* 502 U.S. 224, 228, 112 S.Ct. 534, 537, 116 L.Ed.2d 589 (1991) ("Immunity ordinarily should be decided by the court long before trial."). However, the qualified immunity reasonableness determination is made by evaluating the officer's conduct in light of the established facts, and so must be decided at the summary judgment phase. *See Baker v. Putnal,* 75 F.3d 190, 197 (5th Cir.1996) ("[I]f the defendant asserts qualified immunity, the complaint should generally not be dismissed for failure to state a claim because the issue of whether immunity applies is a factual question related to the merits.") (citing *Scheuer v. Rhodes,* 416 U.S. 232, 250, 94 S.Ct. 1683, 1693, 40 L.Ed.2d 90 (1974)). Thus, Defendants' Motion for Summary Judgment on qualified immunity grounds may be granted only if there is no genuine issue of material fact as to the circumstances upon which the Court must evaluate the officers' actions. *See Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985) ("the defendant is entitled to summary judgment if discovery fails to uncover evidence sufficient to create a genuine issue as to whether the defendant in fact committed" acts that violate clearly established rights).

■ The Fifth Circuit has developed a two-step process for the examination of a claim of qualified immunity. The first inquiry is whether Plaintiff has alleged a violation of a clearly established constitutional right. *See King v. Chide,* 974 F.2d 653, 656 (5th Cir.1992); *see also Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991). In this case, Defendants do not

dispute that Plaintiff has properly alleged constitutional violations. The rights to be free from arrest without probable cause and to be free from excessive force are clearly established. *See Beck v. State of Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964) (constitutionality of arrest depends on probable cause); *Graham v. Connor*, 490 U.S. 386, 388, 109 S.Ct. 1865, 1867–68, 104 L.Ed.2d 443 (1989) (excessive force claims governed under Fourth Amendment standards).

The next step of the qualified immunity analysis is to judge the reasonableness of the alleged behavior. *See King*, 974 F.2d at 657. Again, this is a fact-specific inquiry, in which the Court must determine whether the Defendants' actions were objectively reasonable in view of the facts available to them. *See Lampkin v. City of Nacogdoches*, 7 F.3d 430, 435 (5th Cir.1993). However, as detailed in the factual summary, *supra*, the circumstances surrounding Plaintiff's arrest and detainment are highly controverted by the parties. Defendants' Motion for Summary Judgment erroneously relies exclusively on the Defendants' own self-serving affidavits, and entirely disregards the fact that Plaintiff's account of the events differs substantially. Defendants do not even attempt to address the disputed factual issues, expecting the Court to rely on their version. However, as Defendants' counsel should be well aware, on a motion for summary judgment the Court must accept the evidence of the non-moving party and draw all reasonable inferences in favor of that party. *Matsushita*, 475 U.S. at 585–87, 106 S.Ct. at 1355–56.

In fact, the summary judgment evidence supporting Plaintiff's tale appears to be stronger than that supporting Defendants. Plaintiffs have submitted the deposition of Emily Harrell, a waitress at J. Larkins, who testified that she did not believe Sturm was drunk when he left the club. In fact, she testified that Sturm seemed "very—very sober." She also testified that she saw Sturm being taken into the back room, looking fully intact with his shirt tucked in. During the time that Sturm was in the back room, approximately 45 minutes in her opinion, she was not allowed to go into the room, which

was "very rare," even when the police had suspects in the room. She further testified that Sturm emerged with a bloody face and shirt, and that he was not walking well, and that she never saw Sturm resisting the officers. Plaintiff also has submitted the deposition of Michelle Phillips, also a former J. Larkins employee, who testified that she was standing outside the door of the back office when Sturm was taken there. According to her account, she heard yelling and noises that sounded things being hit up against the wall. She confirms Harrell's account of Sturm's beaten and bloody condition when he emerged from the room, and his lack of resistance to the officers. Based on the events Phillips saw and/or perceived, she later informed the Internal Affairs Department that she felt that an officer had "gone beyond the limits of his duty."

This competent summary judgment evidence supports Plaintiff's version of the events, and unquestionably presents a material issue of fact as to the reasonableness of the officers' actions. This evidence is enough to preclude summary judgment; the Court continues merely to underscore Defendants' egregious misrepresentation of some material issues in this case. First, in their attempt to prove that Sturm was drunk, Defendants assert in their Motion for Summary Judgment, in bold type, that Plaintiff's blood alcohol level on the morning after the incident was .0841. In fact, the number that Defendants represent to this Court as indicating Plaintiff's blood alcohol level is actually "0841," the *time* at which the blood sample was taken. Defendants seized on one handwritten number on the report of Plaintiff's family physician and greatly misrepresented its significance to the Court, apparently without attempting to verify the number's significance. Defendants also apparently neglected to read their own summary judgment evidence, a report of the Police Department's Internal Affairs Division, which clearly states that: "A Lab report dated September 23, 1994 reflects Mr. Sturm's blood test was *negative for alcohol.*" (emphasis added). Defendants have also selectively quoted portions of Plaintiff's testimony, completely misrepresenting such testimony to the Court.[1]

---

1. Specifically, Defendants quote Plaintiff's testimony that Officer Doyle assisted Ross "by pre-

venting me from running out the door ..." to

Because the Court is unable to discern at this time whether Defendants' blatantly erroneous assertions are intentionally misleading or simply an example of manifest incompetence, it will not impose sanctions at this time. However, Defendants are warned that harsh sanctions can and will issue under Rule 11 for any such misconduct in the future.

In summary, the inquiry into the individual Defendants reasonableness for qualified immunity purposes is suffused with factual issues and controverted evidence and will *not* be resolved on summary judgment. Plaintiff's claims will proceed to trial, where he will given the opportunity of having a jury evaluate the evidence and the demeanor and trustworthiness of the various witnesses who assert fundamentally contradictory allegations. Accordingly, Defendants' Motion for Summary Judgment on qualified immunity grounds is **DENIED**.

## IV. THE CITY OF HOUSTON'S LIABILITY UNDER 42 U.S.C. § 1983

■ Defendants also move to dismiss the Plaintiff's claims against the City of Houston under 42 U.S.C. § 1983, alleging that Plaintiff has not established the existence of a policy or custom that caused the constitutional violations. The Supreme Court has held that, although municipalities are "persons" within the meaning of § 1983, they may not be held liable under a theory of respondeat superior or vicarious liability. *See Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 690–94, 98 S.Ct. 2018, 2035–37, 56 L.Ed.2d 611 (1978). Instead, the allegedly unconstitutional action must be pursuant to an official municipal policy of some nature. *See Monell*, 436 U.S. at 691, 98 S.Ct. at 2036. Accordingly, to establish a claim for municipal liability under § 1983, a plaintiff must allege facts which, if true, establish the existence of a constitutional violation caused by a municipality's adoption, or failure to adopt, a particular policy, and that such action went beyond mere negligent protection of the plaintiff's constitutional rights. *See Colle v. Brazos County, Texas*, 981 F.2d 237, 246 (5th

Cir.1993); *Hare v. City of Corinth*, 74 F.3d 633, 649–50 (5th Cir.1996).

■ Plaintiff asserts first that the City's policy of allowing Defendant Ross to not attend the trial of those citizens he arrests while working on his extra job gave him "the opportunity to abuse suspects with impunity, knowing that he would not have to face a jury or testify under oath regarding his actions." The Court finds that this allegation, on its face, may be sufficient to show an unconstitutional custom on the part of the City. Furthermore, the manner in which the City of Houston has handled this case may be evidence of an unconstitutional policy or custom.

Furthermore, Plaintiff requests additional time for discovery to determine whether other policies of the City may have led to the alleged constitutional abuses. On September 19, 1997, the Court stayed all discovery in this case, except for discovery limited to the issue of qualified immunity. Thus, Plaintiff has had no opportunity to conduct discovery on his § 1983 causes of action or amend his Complaint accordingly. Therefore, Defendants' Motion to Dismiss Plaintiff's § 1983 claims against the City of Houston is **DENIED** at this time, to allow further discovery on this issue.

## V. CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment on qualified immunity grounds is **DENIED**. Defendants' Motion to Dismiss Plaintiff's 42 U.S.C. § 1983 claims against the City of Houston is also **DENIED**, in order to allow for further discovery on this issue. All parties are **ORDERED** to bear their own costs and attorney's fees incurred herein to date. The parties are also **ORDERED** to file nothing further regarding qualified immunity issues in this case, including motions to reconsider and the like, unless supported by *compelling* new evidence not available at the time of the instant submissions. Instead, the parties are instructed to seek any further relief to which they feel themselves

show that "If Plaintiff's [sic] wasn't resisting arrest, then why would there be a need for an officer to be 'preventing' him from running?"

What Defendants neglect to inform the Court is that Plaintiff went on to say, in the same sentence, "if I had chosen to run, which I didn't."

entitled from the United States Court of Appeals for the Fifth Circuit, as may be appropriate in due course.

**IT IS SO ORDERED.**